| | |
|---|---|
| 1 | Floyd W. Bybee, #012651 |
| 2 | **FLOYD W. BYBEE, PLLC**<br>2173 E. Warner Road<br>Suite 101 |
| 3 | Tempe, Arizona 85284<br>Office:  (480) 756-8822 |
| 4 | Fax: (480) 756-8882<br>floyd@bybeelaw.com |
| 5 | |
| 6 | Attorney for Plaintiff |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **Lloyd H. Garner, Jr.**, an individual; | ) ) | No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| **GE Money Bank;**<br>**Equifax Information Services, LLC;**<br>**Trans Union, LLC;**<br>**Experian Information Solutions, Inc.;** | ) ) ) ) ) | |
| | ) | (Jury Trial Demanded) |
| Defendants. | ) ) ) | |

Plaintiff, Lloyd H. Garner, Jr., upon information and belief, and in good faith, alleges as follows:

## I. Preliminary Statement

1. Plaintiff brings this action for damages based upon Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. Plaintiff seeks an award of statutory damages, actual damages, punitive damages, costs and attorney's fees.

## II. Jurisdiction

2. Jurisdiction of this Court, over this action and the parties herein, arises

under 15 U.S.C. § 1681p (FCRA), and 28 U.S.C. § 1337. Venue lies in the Phoenix Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendants perpetrated therein.

### III. Parties

3. Plaintiff is a natural person residing in Maricopa County, Arizona.

4. At times relevant herein, Plaintiff was allegedly obligated to pay a consumer debt to Retailer's National Bank ("RNB") and/or GE Money Bank ("GEMB"), and is a "consumer" as defined by FCRA § 1681a(c).

5. Defendant GEMB is federal savings bank with its principal offices located at 4246 South Riverboat Road, Suite 200, Salt Lake City, Utah 84123.

6. GEMB is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

7. Defendant Equifax Information Services, LLC is a Georgia limited liability company authorized to do business in Arizona.

8. Equifax is a both a "person" and a "consumer reporting agency" as those terms are defined and contemplated under the FCRA.

9. Defendant Trans Union LLC is a Delaware limited liability company authorized to do business in Arizona.

10. Trans Union is a both a "person" and a "consumer reporting agency" as those terms are defined and contemplated under the FCRA.

11. Defendant Experian Information Solutions, Inc. is an Ohio corporation authorized to do business in Arizona.

12. Experian is a both a "person" and a "consumer reporting agency" as those terms are defined and contemplated under the FCRA.

- 2 -

## IV. Factual Allegations

13. In or about 1998, Plaintiff opened a Mervyn's credit card account through RNB.
14. In 2002, Plaintiff paid off and closed his charge account with RNB.
15. Subsequent to closing the account, RNB allowed unauthorized charges to be made on the account which Plaintiff subsequently disputed with RNB.
16. Despite Plaintiff's disputes, RNB continued to bill him and add late charges and interest to the account.
17. Plaintiff ultimately sued RNB in the U.S. District Court for the District of Arizona under the case name Garner vs. Retailers National Bank, et al., CV03-0667-PHX-SMM.
18. The Honorable Stephen M. McNamee issued an order in the case dated September 13, 2004 finding that Plaintiff was not liable to RNB for the disputed charges on the account.
19. Sometime in 2004, RNB sold its Mervyn's accounts, including Plaintiff's account, to GEMB.
20. RNB maintained subscriber contracts with the three major national consumer reporting agencies, Equifax, Trans Union and Experian.
21. Those consumer reporting agencies re-report data provided them by RNB.
22. Periodically RNB provides credit reporting data to those agencies for inclusion in data reports published by those consumer reporting agencies.
23. These consumer reporting agencies re-report RNB's data with RNB's consent and at RNB's behest.
24. GEMB maintained subscriber contracts with the three major national consumer reporting agencies, Equifax, Trans Union and Experian.
25. Those consumer reporting agencies re-report data provided them by GEMB.

26. Periodically GEMB provides credit reporting data to those agencies for inclusion in data reports published by those consumer reporting agencies.

27. These consumer reporting agencies re-report GEMB's data with GEMB's consent and at GEMB's behest.

**Equifax**

28. In September or October 2004, Plaintiff sent a letter to Equifax disputing the RNB tradeline, which it was reporting with the status of "charge-off" and with a current balance of $212.

29. An account in a "charge-off" status is considered derogatory in the credit industry.

30. Included with Plaintiff's dispute to Equifax was a copy of Judge McNamee's September 13, 2004 Order finding that Plaintiff was not liable for the RNB charges.

31. Upon information and belief, Equifax contacted RNB concerning Plaintiff's dispute.

32. Upon information and belief, Equifax did not provide RNB all relevant information regarding the dispute it received from Plaintiff.

33. Upon information and belief, RNB responded to Equifax and verified that the information it was reporting was correct.

34. Upon information and belief, Equifax did not conduct any independent investigation of the dispute.

35. On October 13, 2004, Equifax prepared and sent Plaintiff a report of its investigation of his dispute of the RNB tradeline.

36. In that report, Equifax stated that it had "researched the credit account" and had "verified that this item has been reported correctly."

37. The October 13, 2004 Equifax report reflected RNB reporting of the

1  account with a status of "charge off" and a current balance of $212.

2  38. In October or November 2004, Plaintiff again disputed the RNB account
3  with Equifax.

4  39. Equifax sent Plaintiff a report dated November 4, 2004 showing that it had
5  investigated Plaintiff's dispute and that the RNB account had been verified.

6  40. However, the November 4, 2004 report reflected that Equifax had only
7  investigated a RNB tradeline which was not reported with any derogatory
8  information, but was reported as a lost or stolen card. Plaintiff had not
9  disputed this trade with Equifax.

10  41. In November or December 2004, Plaintiff again disputed the RNB account
11  with Equifax.

12  42. Again, Equifax sent Plaintiff a report dated December 10, 2004 showing
13  that it had investigated Plaintiff's dispute and that the RNB account had
14  been verified.

15  43. However, the December 10, 2004 report reflected that Equifax had only
16  investigated a RNB tradeline which was not reported with any derogatory
17  information, but was reported as a lost or stolen card. Plaintiff had not
18  disputed this trade with Equifax.

19  44. On or about March 3, 2005, Plaintiff obtained a copy of his Equifax credit
20  report.

21  45. The March 2005 Equifax report showed that the RNB account previously
22  disputed by Plaintiff was now being reported by Equifax under the name of
23  "Gemb/Mervyn's."

24  46. The March 2005 Equifax report showed that GEMB was reporting
25  Plaintiff's account in a "charge-off status with a current balance of $212.

26  47. Plaintiff immediately sent another dispute letter to Equifax stating that the

- 5 -

1
2
        GEMB account was the same as the previously disputed RNB account, and was disputed.

3
4
48. Upon information and belief, Equifax contacted GEMB concerning Plaintiff's dispute.

5
6
49. Upon information and belief, Equifax did not provide GEMB all relevant information regarding the dispute it received from Plaintiff.

7
8
50. At all times relevant herein, Equifax was aware that GEMB had purchased the Mervyn's accounts from RNB.

9
10
51. Upon information and belief, GEMB responded to Equifax and verified that the information it was reporting was correct.

11
12
52. On April 6, 2005, Equifax sent Plaintiff a report of its investigation of Plaintiff's dispute.

13
14
15
53. The April 2005 report shows that the "charge-off" status and current balance owing had been verified and remained on the report. The report also reflected that the prior paying history had been deleted.

16
17
54. Upon information and belief, Equifax decided on its own to delete the prior paying history from the GEMB tradeline.

18
19
55. Deleting the prior paying history from the GEMB tradeline, did not resolve Plaintiff's dispute, nor improve the reporting status of the GEMB tradeline.

20
21
56. Upon information and belief, Equifax did not conduct any independent investigation of the dispute.

22
57. In September 2005, Plaintiff obtained a copy of his Equifax credit report.

23
24
25
26
58. The September 2005 report showed that Equifax was continuing to report the disputed GEMB tradeline to Plaintiff's creditors and other users of his credit report, with a status of a "bad debt" and as a "charge-off," with a balance past due of $212.

59. From October 2005 to present, Equifax has created and sent erroneous and inaccurate credit reports to Plaintiff's creditors or potential creditors no less than four times.

**Trans Union**

60. In September or October 2004, Plaintiff sent a letter to Trans Union disputing the RNB tradeline, which it was reporting with the status of "charge-off" and with a current balance of $473.

61. Included with Plaintiff's dispute to Trans Union was a copy of Judge McNamee's September 13, 2004 Order finding that Plaintiff was not liable for the Mervyn's charges.

62. Upon information and belief, Trans Union contacted RNB concerning Plaintiff's dispute.

63. Upon information and belief, Trans Union did not provide RNB all relevant information regarding the dispute it received from Plaintiff.

64. Upon information and belief, RNB responded to Trans Union and verified that the information it was reporting was correct.

65. Upon information and belief, Trans Union did not conduct any independent investigation of the dispute.

66. On September 23, 2004, Trans Union prepared and sent Plaintiff an updated credit report including the results of its investigation of his dispute of the RNB tradeline.

67. The September 23, 2004 Trans Union report showed that the RNB tradeline had been updated to reflect a zero balance, but with a derogatory status of "payment after charge off/ collection."

68. The September 23, 2004 Trans Union report also showed a second RNB account with a zero balance, and a status of never late.

1    69.  In November 2004, Plaintiff again disputed the RNB account with Trans
2         Union.
3    70.  Upon information and belief, Trans Union contacted RNB concerning
4         Plaintiff's dispute.
5    71.  Upon information and belief, RNB responded to Trans Union and instructed
6         it to delete the two RNB tradelines.
7    72.  On December 20, 2004, Trans Union sent Plaintiff an updated credit report
8         which showed that both RNB accounts had been deleted.
9    73.  However, in March 2005, Plaintiff obtained a copy of his Trans Union
10        credit report which showed one tradeline reported by GEMB with a balance
11        of $212 owing and a status of "charged-off as bad debt."
12   74.  This GEMB tradeline also included the remark "dispute reslvd-cust
13        disagrees."
14   75.  At all times relevant herein, Trans Union was aware that GEMB had
15        purchased the Mervyn's accounts from RNB.
16   76.  At no time did Trans Union send notice to Plaintiff that the Mervyn's
17        account as reported by GEMB had been reinserted in his Trans Union credit
18        report.
19   77.  In March 2005, Plaintiff disputed the GEMB tradeline with Trans Union.
20   78.  On March 11, 2005, Trans Union sent Plaintiff a form letter stating "We are
21        unable to accept the documentation you sent."
22   79.  On April 5, 2005, Trans Union sent Plaintiff a response to his dispute of the
23        GEMB tradeline.
24   80.  The April 5, 2005 Trans Union report showed that Trans Union had verified
25        the GEMB tradeline was continuing to report it with a $212 balance and a
26        status of "Charged off as a bad debt."

81. In September 2005, Plaintiff obtained a copy of his Trans Union credit report.
82. The September 2005 report showed that Trans Union was continuing to report the disputed GEMB tradeline as a derogatory item on Plaintiff's credit report sent to Plaintiff's creditors and other users, including a "charge off" status and a current balance of $212.
83. From September 2004 to present, Trans Union has created and sent erroneous and inaccurate credit reports to Plaintiff's creditors or potential creditors no less than four times.

**Experian**

84. In September 2004, Plaintiff sent Experian a letter disputing the RNB tradeline, which was reporting as a "charge-off" and with a balance of $473 owing.
85. Included with Plaintiff's dispute to Experian was a copy of Judge McNamee's September 13, 2004 Order finding that Plaintiff was not liable for the Mervyn's charges.
86. Experian responded on September 24, 2004 stating that "we are unable to honor your request because we were unable to access your report using the identification information you supplied."
87. Plaintiff mailed a second dispute to Experian in October 2004.
88. Included with Plaintiff's dispute letter to Experian was a copy of Judge McNamee's September 13, 2004 order stating that Plaintiff was not liable for the Mervyn's charges.
89. Upon information and belief, Experian contacted RNB concerning Plaintiff's dispute.
90. Upon information and belief, Experian did not provide RNB all relevant

information regarding the dispute it received from Plaintiff.

91. Upon information and belief, RNB responded to Experian and verified that the information it was reporting was correct.

92. Upon information and belief, Experian did not conduct any independent investigation of the dispute.

93. Experian sent Plaintiff a response dated October 23, 2004 which stated that the RNB account had been "updated."

94. However, the RNB tradeline continued to be reported by Experian with a current balance of $473, and a status of "charge-off."

95. The October 23, 2004 report also showed a second or duplicate RNB tradeline with a current balance of $472 and a status of "charge-off."

96. The October 23, 2004 report also stated that both RNB accounts had been "verified and updated on 10-2004."

97. Upon information and belief, RNB was reporting both tradelines to Experian. In the alternative, RNB and GEMB were each reporting one tradeline to Experian as belonging to Plaintiff.

98. Experian sent Plaintiff another credit report dated October 28, 2004 which again contained two tradelines on the Mervyn's account, one reported by Retailers National Bank and the other by MCCBG/MERVYN'S.

99. Both tradelines also showed a balance of $472 and 473 owing, and a "charge-off" status. The report also showed that both accounts had been verified by Experian in October 2004.

100. Plaintiff received another Experian credit report dated October 28, 2004 which reflected two derogatory tradelines reported by RNB and/or GEMB.

101. Plaintiff sent Experian another letter in November 2004 disputing both RNB tradelines.

102. Upon information and belief, Experian contacted RNB concerning Plaintiff's dispute.
103. Upon information and belief, Experian did not provide RNB all relevant information regarding the dispute it received from Plaintiff.
104. Upon information and belief, RNB responded to Experian and verified that the information it was reporting was correct.
105. Upon information and belief, Experian did not conduct any independent investigation of the dispute.
106. Experian responded by sending Plaintiff an updated report dated November 24, 2004.
107. The November 24, 2004 Experian report showed two tradelines being reported by RNB, one with a balance of $472 and a status of "charged-off," and the other with a status of "lost or stolen card."
108. Subsequent reports received from Experian in March 2005 and September 2005 did not show any derogatory tradelines reported by either RNB or GEMB.
109. From September to November 2004, Experian created and sent erroneous and inaccurate credit reports to Plaintiff's creditors or potential creditors no less than four times.

110. Despite Plaintiff's numerous disputes to the consumer reporting agencies, GEMB continues to attempt to collect the balance, including reporting derogatory information to Plaintiff's credit bureaus.

111. As a direct result and proximate cause of Defendants' continued reporting of erroneous and adverse information concerning Plaintiff, Plaintiff has suffered and continues to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, frustration, loss of sleep, extreme anger, physical illness, credit denial, higher interest rates, loss of opportunity, loss of time, and out of pocket expenses.

## V. Causes of Action

### a. Fair Credit Reporting Act

112. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

113. GEMB failed to conduct a reasonable investigation of Plaintiff's disputes, and otherwise failed to comport with FCRA § 1681s-2(b).

114. GEMB has willfully, or alternatively, negligently, violated FCRA § 1681s-2(b) on multiple occasions.

115. Equifax has failed to conduct a reasonable investigation of Plaintiff's disputes, and otherwise failed to comport with FCRA § 1681i.

116. Equifax has willfully, or alternatively negligently, violated FCRA § 1681i and 1681e(b) on multiple occasions.

117. Trans Union has failed to conduct a reasonable investigation of Plaintiff's disputes, and otherwise failed to comport with FCRA § 1681i.

118. Trans Union has willfully, or alternatively negligently, violated FCRA § 1681i and 1681e(b) on multiple occasions.

119. Experian has failed to conduct a reasonable investigation of Plaintiff's

|   |   |   |
|---|---|---|
| 1 |  | disputes, and otherwise failed to comport with FCRA § 1681i. |
| 2 | 120. | Experian has willfully, or alternatively, negligently, violated FCRA § 1681i |
| 3 |  | and 1681e(b) on multiple occasions. |
| 4 | 121. | As a result of Defendants' actions, Plaintiff has been damaged. |
| 5 | 122. | Pursuant to FCRA § 1681*o*, any person who is negligent in failing to |
| 6 |  | comply with any requirement imposed under the FCRA with respect to any |
| 7 |  | consumer is liable to that consumer in an amount equal to the sum of (1) |
| 8 |  | any actual damages sustained by the consumer as a result of the failure and |
| 9 |  | (2) in the case of any successful action to enforce any liability under 15 |
| 10 |  | U.S.C. § 1681*o*, the costs of the action together with reasonable attorneys' |
| 11 |  | fees. |
| 12 | 123. | As a result of Defendants' negligent failure to comply with the FCRA, |
| 13 |  | Defendants are liable to Plaintiff in an amount equal to the sum of (1) any |
| 14 |  | actual damages sustained by Plaintiff as a result of said failure and (2) the |
| 15 |  | costs of this action together with reasonable attorneys' fees. |
| 16 | 124. | Pursuant to 15 U.S.C. § 1681n, any person who willfully fails to comply |
| 17 |  | with any requirement imposed under the FCRA with respect to any |
| 18 |  | consumer is liable to that consumer in an amount equal to the sum of (1) |
| 19 |  | any actual damages sustained by the consumer as a result of the failure or |
| 20 |  | damages or not less than $100.00 and not more than $1,000.00; (2) such |
| 21 |  | amount of punitive damages as the court may allow; and (3) in the case of |
| 22 |  | any successful action to enforce any liability under 15 U.S.C. § 1681n, the |
| 23 |  | costs of the action together with reasonable attorneys' fees. |
| 24 | 125. | As a result of Defendants' willful failure to comply with the FCRA, |
| 25 |  | Defendants are liable to Plaintiff in an amount equal to the sum of (1) any |
| 26 |  | actual damages sustained by Plaintiff as a result of the failure or damages of |

not less than $100.00 and not more than $1,000.00 for each such violation; (2) such amount of punitive damages as the court may allow; and (3) the costs of this action together with reasonable attorneys' fees.

## VI.  Demand for Jury Trial

Plaintiff hereby demands a jury trial on all issues so triable.

## VII.  Prayer for Relief

WHEREFORE, Plaintiff requests that judgment be entered against Defendants for:

a) Actual damages in an amount to be shown at trial;

b) Statutory damages pursuant to FCRA § 1681n;

c) Punitive damages pursuant to FCRA § 1681n;

d) Costs and reasonable attorney's fees; and

e) Such other relief as may be just and proper.

DATED       November 23, 2005      .

**FLOYD W. BYBEE, PLLC**

  s/ Floyd W. Bybee
Floyd W. Bybee, #012651
2173 E. Warner Road
Suite 101
Tempe, Arizona 85284
Office:  (480) 756-8822
Fax: (480) 756-8882
floyd@bybeelaw.com

Attorney for Plaintiff